THE BOARD OF HEALTH OF THE TOWNSHIP OF CRAN-
FORD, IN THE COUNTY OF UNION. v. THE COURT OF
COMMON PLEAS IN AND FOR THE COUNTY OF UNION
ET AL.

Submitted July 5, 1912—Decided November 27, 1912.

1. The Common Pleas is without jurisdiction to try *de novo* an
   appeal from the small cause court, adjudging a defendant guilty
   of a violation of the provisions of the sanitary code of a munici-
   pality, ordained under the provisions of the act creating local
   boards of health. 2 *Comp. Stat.*, *p.* 2662.
2. If such a right of appeal exist, it confers no power upon the Com-
   mon Pleas to adjudicate upon the reasonableness of the regula-
   tion of the local board of health, since such an issue can be de-
   termined only by this court upon *certiorari.*
3. It was not within the legislative 'intent in enacting legislation
   conferring upon the local boards of health the power to prescribe
   quarantine regulations, in a district or locality infected with a
   contagious disease, to subject the discretion of such boards to the
   review of the local courts for the purpose of substituting the
   judgment of such tribunal for that of the boards to which the
   power is specifically committed.
4. If the boards of health so constituted transcend their authority,
   in a given case, the act itself provides a remedy to the party
   aggrieved.

On *certiorari* to the Union Common Pleas.

Before Justices TRENCHARD, PARKER and MINTURN.

For the prosecutor, *Lindabury & Faulks.*

For the defendants, *Collins & Corbin.*

The opinion of the court was delivered by

MINTURN, J. The legislature (2 *Comp. Stat.*, *p.* 2662)
empowered all local boards of health to pass, alter or amend
ordinances, and make rules and regulations in regard to the
public health, within their several jurisdictions, for the fol-
lowing purposes, *inter alia*, section 12:

"To prevent the spreading of dangerous epidemics or contagious diseases, and to declare that the same has become epidemic, and to maintain and enforce proper and sufficient quarantine whenever deemed necessary."

"SECTION 50. That any local board of health may prescribe a penalty for the violation of any ordinance, section of code or amendment thereof, heretofore or hereafter passed by such board, not to exceed one hundred dollars, and not less than two dollars."

The local board of health of Cranford, in the county of Union, pursuant to this authority, adopted a sanitary code which provides:

"SECTION 11. Whenever there shall occur in the township of Cranford a case of scarlet fever the board of health, or its authorized agent, shall place on the house in which said case or cases are confined one or more placards stating that a case of contagious disease exists within the house."

"SECTION 12. Whenever a placard shall be placed on a house as provided in section 11 of this article no person or persons except the medical attendant and nurses shall enter therein or depart therefrom without permission of the board of health or its authorized agent."

"SECTION 18. Any person violating any of the provisions of this article shall, upon conviction thereof, forfeit and pay a penalty of fifty dollars."

The home of Edward Montenecourt, a resident of Cranford, was placed under quarantine, by order of the board of health, upon the ground of the existence therein of the disease of scarlet fever. The house was duly placarded, continuously from December 20th to the 29th, inclusive. Mr. Montenecourt, who, it is conceded, was neither a medical attendant nor a nurse during this interval, departed from the house without the permission of the board, or its agent, and, consequently, subjected himself to the charge of having violated the provision of the sanitary code referred to.

The board of health thereafter instituted suit in the small cause court against him to recover the prescribed penalty;

and after a hearing that court found him guilty and imposed the penalty and costs.

Thereafter an appeal was taken to the Common Pleas, where the case was tried *de novo*, and testimony presented in behalf of Mr. Montenecourt as to the reasonableness of the board's order, as to him, upon which the court reversed the judgment below, and rendered judgment against the board of health, which judgment is before us for review upon this writ. The reversal was based upon testimony taken before the Pleas, designed to show that the necessity for the quarantine did not exist as to Mr. Montenecourt.

We think the Common Pleas was without jurisdiction to determine this case upon appeal. We assume that the appeal was taken under the provisions of the eighteenth section of the Health act. 2 *Comp. Stat., p.* 2666. But that section substantially in its present form was before this court in *Holzworth* v. *Newark,* 21 *Vroom* 85, and it was there held that the words "unless an appeal be granted" did not confer the right of appeal upon the Pleas, if such right did not exist without this language. We deem that case controlling here.

But upon the general merits of the controversy, we are unable to perceive anything in the legislation referred to conferring upon the Common Pleas the right to review the conditions, and the emergency in the locality, which prompted the board of health to impose the restrictions and quarantine complained of in this case.

We are unable to perceive any authority in the legislation itself or in the public policy upon which it is based which can be said to contemplate the submission to a legal tribunal of the public necessity, which requires in an emergency the prompt and expeditious intervention of a board to which the legislature for the protection of life and health, in a community, has especially committed the determination of the facts.

No question is made in the case at bar as to the conceded power of a proper reviewing tribunal to pass upon the reasonableness of an ordinance or a resolution passed under general

laws, or the manner of the exercise of the powers therein conferred. That question has long been settled, in the affirmative, by repeated adjudications. *Powell* v. *Pennsylvania,* 127 *U. S.* 678; *Jacobson* v. *Massachusetts,* 197 *Id.* 11; *Haynes* v. *Cape May,* 21 *Vroom* 55.

But the insistence is, that a tribunal to which an appeal is presumably given may by its review of conditions and exigencies, in a trial *de novo,* determine adversely to the board to whom the power has been specifically committed, by legislative act, that its exercise in any given case was unwarranted, and that its discretion was improperly exercised.

We find no authority in the act for such a claim, and it is proper to assume that if the legislature intended to confer such power, it would have found expression in the act. The statute makes provision for the interposition of the Court of Chancery under certain conditions, and it defines the liability which may be imposed upon the members of the board, by reason of an excessive or illegal use of power conferred. *Valentine* v. *Englewood,* 47 *Vroom* 509.

The legislative recital of these remedies carries with it a presumption of the exclusion of other and additional remedies. *Expressio unius est exclusio alterius. Regnia* v. *Bell,* 7 *T. R.* 600; *Paul* v. *Gloucester,* 21 *Vroom* 588.

To assume that the legislature intended to confer a review of a discretionary power of this character, vested in a statutory board, charged with its exercise in critical situations, involving detriment to the life and health of a community, is tantamount to a declaration that the police power of the state is moribund and useless.

It will not be assumed, therefore, in the construction of such a statute, that the legislature intended to defeat its own will or to create absurd results such as would ensue under such conditions. *United States* v. *Kirby,* 7 *Wall.* 482.

Aside from these considerations, the rule of construction of such statutes as that *sub judice,* has been settled by many adjudications in this state.

In *Haynes* v. *Cape May, supra,* it was held by Mr. Justice Depue, speaking for this court, that "When the legislature

has defined the delegated powers, and prescribed with precision the penalties that may be imposed, an ordinance within the powers granted, prescribing a penalty within the designated limit, cannot be set aside as unreasonable."

This case was cited with approval by Mr. Justice Van Syckel, in his opinion in *Paul* v. *Gloucester, supra.* In *Kennelly* v. *Jersey City,* 28 *Vroom* 296, Mr. Justice Dixon, speaking for this court, says: "The act of 1859 expressly empowers the city authorities to designate the number of tracks that shall be laid in any street, lane or avenue of the city. This delegation of power is too specific to permit the court to overturn this ordinance on the ground stated" (*i. e.,* that it was unreasonable).

In *Trenton Horse Railroad Co.* v. *Trenton,* 24 *Vroom* 136, Mr. Justice Reed, speaking for this court, said: "Had the legislature given the option to prescribe specific modes of using streets, or to make specific regulations for stages and vehicles, no objection could be raised in respect of the reasonableness of the ordinance passed in strict conformity with the power. The presumption in favor of their validity would be conclusive."

Chief Justice Gummere, in *Raffetto* v. *Mott,* 31 *Vroom* 415, declared: "When an ordinance has been passed by a municipal body under a legislative power, which is granted in definite and precise terms, such ordinance cannot be set aside as unreasonable."

In *Dobbins* v. *Los Angeles,* 195 *U. S.* 223, Mr. Justice Day enunciated the public policy underlying such enactments and said: "Every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and it is not the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations, for the protection of local rights and the health and welfare of the people in the community."

In *Valentine* v. *Englewood, ubi supra,* Mr. Justice Swayze, construing the act *sub judice,* said: "In the present case the legislature has itself undertaken in effect to make a nuisance

of what the board of health shall, upon reasonable and probable cause, determine to be a cause of disease."

In 21 *Cyc.* 403, the rule is enunciated upon a review of the authorities that "prompt and vigorous action in cases affecting the health of the community, is frequently of the highest importance, and statutes intended to promote the public health and safety will be generally so construed, if possible, as to make them immediately effective; and in the absence of a statute permitting it, there is no right of appeal from the orders of the boards of health, either to higher administrative authorities or to the courts." Citing *Brown* v. *Narragansett,* 21 *R. I.* 503.

The refusal of this court to interfere upon its prerogative writ for the purpose of declaring void as unreasonable such an administrative act authorized by specific enactment, where no constitutional right is involved, clearly manifests the absolute absence of jurisdiction in a lower tribunal to adjudicate the unreasonableness of such regulation upon trial *de novo* or otherwise.

The only issue before the small cause court was whether or not the defendants in the proceeding had violated the code provision, and thereby incurred the prescribed penalty. Assuming the jurisdiction of the Pleas to exist, the issue upon the appeal was in nowise liberalized or enlarged. The reasonableness of the regulation involved did not enter into the issue upon that appeal.

Such an issue, if presented, was a subject for determination by this court upon *certiorari.* It was clearly *coram non judice* before the Pleas, and for that reason, if for no other, the judgment of the Common Pleas must be reversed.