ARNOLD A. HART, EXECUTOR, ETC., ET AL., PROSECU-
TORS, v. TOWNSHIP OF TEANECK, DEFENDANT.

Argued January 15, 1946—Decided September 4, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutors, *George F. Losche.*

For the defendant, *Donald M. Waesche.*

The opinion of the court was delivered by

DONGES, J. This writ of *certiorari* brings up an ordinance of the Township of Teaneck entitled "An ordinance regulating the opening and closing of lunch wagons within the limits of the Township of Teaneck." The first section of the ordinance provides that "all lunch wagons or places in which food is served to the public, commonly known as lunch wagons, shall be closed to the public, and business therein is prohibited, after the hour of 1:00 A. M. and before the hour of 7:00 A. M. on all days." The second section provides a penalty for violation.

The prosecutor Hart is the owner of lunch wagon premises located on Cedar Lane in Teaneck in which the prosecutor Grace Ira operates a lunch wagon business under the name of Cedar Lane Grille. It has been her custom to operate her business twenty-four hours a day, seven days a week, and prosecutors object to the enforced closing during the early morning hours which is imposed by the ordinance.

The first point is that the ordinance prohibits engagement in a lawful business. The statutory power to regulate eating places is granted by *R. S.* 40:52–1, *et seq.* A regulation of the hours during which a business may operate does not amount to a prohibition of the business. The regulation of the hours of businesses of certain classes has been sustained where it is shown to be a reasonable exercise of the police power. *Spiro Drug Service, Inc., v. Board of Commissioners,* 130 *N. J. L.* 1; *Amodio* v. *Board of Commissioners, West New York,* 133 *Id.* 220; *Falco* v. *Atlantic City,* 99 *Id.* 19. Eating places are establishments affected with the public interest, and, as was said in *Amodio* v. *Board, supra,* "Business, professions and occupations affected with a public interest are subject to reasonable regulation for the common good. The phrase 'affected with a public interest' is the equivalent

of 'subject to the exercise of the police power,' and signifies no more than that 'an industry, for adequate reason, is subject to control for the public good.'" We think the ordinance is regulatory and not prohibitory.

Nor is the regulation unreasonable. There is ample evidence in the depositions of the conditions that exist during the early morning hours at this place of business that would warrant municipal action. Loud noises of patrons, rattling of dishes, and other sounds incident to the operation of a lunch wagon repeatedly occurred to the discomfort and disturbance of nearby residents. Some patrons ate in their automobiles and littered the street with debris. Others urinated at the curb and on adjacent lawns. Prosecutors argue that these are matters for direct police action for the preservation of the peace, but, be that as it may, the conditions which give rise to such events are not beyond the regulatory power of the municipality. The prosecutor Ira herself testified that much of the early morning business at her lunch wagon consisted of persons who had spent the evening drinking at tap rooms and then came to her establishment for food after the tap rooms closed at 2 A. M.

The second point is that the ordinance discriminates against so-called lunch wagons. The point here is that it applies to lunch wagons and not to restaurants and eating places generally. Practically there would seem to be no discrimination because no other eating place of any kind in the township stays open all night. The tap rooms, some of which serve food, close at two o'clock. However, we think that lunch wagons, as they are commonly known, form a proper class for legislation as distinguished from the ordinary type of restaurant. Structurally and in their actual operation they are establishments that tend to emit noises and odors more readily than the ordinary restaurant. They are compact, close to the street, practically open-air in the summertime, and altogether are of such a nature as to tend to disturb nearby residents. We think the ordinance cannot be said to be discriminatory. As was said in *Amodio* v. *Board, supra*, "Nor is the ordinance discriminatory because 'beauty parlors and all other businesses, trades and professions are not af-

fected thereby.' As noted, the exigency in the particular case is for the judgment of the lawmaking power; and, unless there is an utter lack of basis for the classification, the action taken is not discriminatory in the constitutional sense." There is no such utter lack of basis in this case.

The third point is directed at alleged ambiguous language in the penalty clause which provides, "any person, whether owner, proprietor or employee, who shall open or permit to be opened, or who shall serve any customers" during the prohibited hours shall be fined, &c. It is argued that this would render liable to punishment an operator who might open the door to clean or to retrieve a forgotten object. Such a construction is strained and unnatural. Obviously the ordinance means to prohibit one from opening a lunch wagon for the transaction of the ordinary business of serving food. There is no merit in the point.

The writ of *certiorari* is dismissed, with costs.

Mr. Justice Colie dissents.